United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OMAR CHAVEZ,

         Plaintiff,

    v.

CITY OF PETALUMA, et al.,

         Defendants.

Case No.  14-cv-05038-MEJ

**ORDER GRANTING MOTIONS TO DISMISS**

Re: Dkt. Nos. 25, 28

## INTRODUCTION

Plaintiff Omar Chavez brings this civil rights action against the City of Petaluma, Chief Patrick Williams, and Officers Michael Page and Paul Accornero (the "City Defendants"), as well as the County of Sonoma and Sheriff Steve Freitas (the "County Defendants") (collectively "Defendants"), concerning alleged violations of Plaintiff's constitutional rights arising out of his November 14, 2012 arrest and subsequent confinement.  *See* Compl., Dkt. No. 1.  Pending before the Court are two Motions to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6): one by the County Defendants (Dkt. No. 25, "Cnty. Defs.' Mot."), and the other by the City Defendants (Dkt. No. 28, "City Defs.' Mot.").  Plaintiff filed an Opposition (Dkt. No. 33) and Defendants filed Replies (Dkt. No. 36, "City Defs.' Reply"; Dkt. No. 37, "Cnty. Defs.' Reply").  The Court finds this matter suitable for disposition without oral argument and VACATES the June 25, 2015 hearing.  *See* Fed. R. Civ. P. 78(b); Civil L.R. 7-1(b).  Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Defendants' Motions for the reasons set forth below.

## BACKGROUND

On November 14, 2012, Petaluma Police Department Officers Michael Page and Paul

United States District Court
Northern District of California

1   Accornero entered Plaintiff's residence at 103 Dana Street, Petaluma, and arrested Plaintiff.

2   Compl. ¶¶ 14, 15, 17.  Plaintiff alleges that Page and Accornero had previously entered onto the

3   porch of his residence without a warrant and, while standing outside the front door, eavesdropped

4   on and "surreptitiously recorded" conversations between Plaintiff and other persons within the

5   residence.  *Id.* ¶ 14.  Plaintiff alleges that Page and Accornero entered the residence without a

6   warrant and unlawfully detained him and others at gunpoint.  *Id.* ¶ 15.  Page, Accornero, and other

7   Petaluma Police Department officers searched the residence and seized various items.  *Id.* ¶ 16.

8   Plaintiff alleges that Page reported in the Petaluma Police Department report that the officers acted

9   without a warrant because Plaintiff was on active state parole on November 14, 2012.  *Id.* ¶ 18.

10  Plaintiff asserts that he had not been on parole since September 2012.  *Id.* ¶ 19.

11      Page, Accornero, and other Petaluma Police Department officers transported Plaintiff to

12  the Sonoma County Jail after his arrest.  *Id.* ¶ 17.  Criminal charges were also filed against

13  Plaintiff in the Sonoma County Superior Court.  *Id.* ¶ 20.  Plaintiff alleges that he was unable to

14  post bail and obtain release from custody because a "parole hold" was placed on him based on his

15  November 14, 2012 arrest.  *Id.* ¶ 22.  Plaintiff alleges that while in custody, he repeatedly

16  requested access to forms and legal materials necessary to challenge and appeal his incarceration,

17  but he was denied access to these materials.  *Id.*

18      Additionally, based on the conversations that Page and Accornero overheard while outside

19  Plaintiff's residence, as well as the evidence they obtained inside the residence, Page obtained

20  seizure warrants to seize all bank accounts in which Plaintiff had an interest.  *Id.* ¶ 21.  A

21  forfeiture case was also filed in the Sonoma County Superior Court seeking to forfeit Plaintiff's

22  interest in all property seized.  *Id.*  The criminal charges were eventually dismissed, as well as the

23  forfeiture case.  *Id.* ¶ 24.  The parole hold was lifted around January 16, 2013, at which time

24  Plaintiff posted bail and was released from custody.  *Id.* ¶ 22.

25      Plaintiff filed his Complaint on November 11, 2014, asserting claims under 42 U.S.C. §

26  1983 as well as state law claims.  Among other things, Plaintiff alleges that the violations of his

27  civil rights were the result of Defendants City of Petaluma, Petaluma Police Chief Williams, and

28  Sonoma County Sheriff Freitas' negligent supervision of the officers involved in investigating,

United States District Court
Northern District of California

1  detaining, arresting, and holding Plaintiff in custody.  *Id.* ¶ 25.  Plaintiff further alleges that the

2  violations of his civil rights described above were the result of customs, policies and/or practices

3  of the Petaluma Police Department and the Sonoma County Sheriff's Department, including but

4  not limited to, negligent hiring, training, supervising, and disciplining members of the Petaluma

5  Police Department and the Sonoma County Sheriff's Department.  *Id.* ¶ 26.

6  **LEGAL STANDARD**

7  Under Rule 12(b)(6), a party may file a motion to dismiss based on the failure to state a

8  claim upon which relief may be granted.  A Rule 12(b)(6) motion challenges the sufficiency of a

9  complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face."

10  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a

11  "probability requirement" but mandates "more than a sheer possibility that a defendant has acted

12  unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations

13  omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual

14  allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the

15  non-moving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.

16  2008).  "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of

17  sufficient facts alleged under a cognizable legal theory."  *Johnson v. Riverside Healthcare Sys.*,

18  534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted); *see also Neitzke v.*

19  *Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the

20  basis of a dispositive issue of law.").

21  Even under the liberal pleading standard of Rule 8(a)(2), under which a party is only

22  required to make "a short and plain statement of the claim showing that the pleader is entitled to

23  relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of

24  a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

25  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

26  dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652

27  F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply

28  recite the elements of a cause of action, but must contain sufficient allegations of underlying facts

3

to give fair notice and to enable the opposing party to defend itself effectively").  The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).  However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### DISCUSSION

Plaintiff asserts four causes of action: (1) a § 1983 claim against all Defendants; (2) a § 1983 claim against the City and the County, as well as Police Chief Williams and Sheriff Freitas; (3) a negligence claim against all Defendants; and (4) a false imprisonment claim against all Defendants.  Compl. ¶¶ 28-46.  As an initial matter, Defendants argue that Plaintiff's claims for negligence and false imprisonment are barred by the statute of limitations under California Government Code section 945.6.[1]  Cnty. Defs.' Mot. at 13-14; City Defs.' Mot. at 11.  Plaintiff

---

[1] "[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or . . . deemed to have been rejected. . . ."  Cal. Gov't Code § 945.4.  Under California Government Code section 945.6, a claimant must present such a claim "not later than six months after the date such notice is personally delivered or deposited in the mail." *Id.* § 945.6(a)(1).  The City Defendants assert that they deposited in the mail the notice of rejection of Plaintiff's claim on May 28, 2013, and thus, the statute of limitations for Plaintiff to file suit against the City Defendants ran on November 28, 2013.  City Defs.' Mot. at 11.  The County Defendants likewise assert that they deposited in the mail their notice of rejection of Plaintiff's claim on June 19, 2013, and thus, the statute of limitations ran on December 19, 2013.  Cnty. Defs.' Mot. at 13-14.  As Plaintiff concedes, by waiting to file until his Complaint until November 14, 2014, his state law claims are untimely.  *See* Opp'n at 5, 8.

United States District Court
Northern District of California

concedes that these claims are untimely.  Opp'n at 5, 8.  Accordingly, these claims are dismissed with prejudice.  The Court now considers Plaintiff's § 1983 claims.

## A.        Legal Standard Under § 1983

Section 1983 provides a remedy for constitutional violations by persons acting under the color of state law.  It provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . . subjects, or causes to be subjected, any citizen of the United States . . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quotation and internal marks omitted).  To prevail on a § 1983 claim, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution; (2) by a person acting under the color of state law.  42 U.S.C. § 1983.

To state a claim against a municipal entity for a constitutional violation, a plaintiff must show than an official's action that caused the plaintiff's injury was pursuant "to official municipal policy of some nature." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  To prevail, a plaintiff must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit, because municipal liability must rest on the actions of the municipality and not the actions of the employees of the municipality.  *Connick v. Thompson*, __ U.S. __, 131 S.Ct. 1350, 1359 (2011).  The Supreme Court has emphasized that "[w]here a plaintiff claims that the municipality . . . has caused an employee to [violate a plaintiff's constitutional rights], rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).  Thus, "a plaintiff seeking to impose liability on a municipality under § 1983" is required "to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1232-33 (9th Cir. 2011) (citations and quotation marks omitted).

United States District Court
Northern District of California

1    "Official municipal policy includes the decisions of a government's lawmakers, the acts of

2    its policymaking officials, and practices so persistent and widespread as to practically have the

3    force of law." *Connick*, 131 S.Ct. at 1359.  Absent a formal governmental policy, a plaintiff must

4    show a "longstanding practice or custom which constitutes the standard operating procedure of the

5    local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified on*

6    *other ground by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).  "[A]n act performed pursuant to

7    a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly

8    subject a municipality to liability on the theory that the relevant practice is so widespread as to

9    have the force of law." *Brown*, 520 U.S. at 404.  Moreover, a policy of inaction may be a

10   municipal policy within the meaning of *Monell*.  *See Long v. Cnty. of Los Angeles*, 442 F.3d 1178,

11   1185 (9th Cir. 2006); *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (per curiam).  "[A]

12   local governmental body may be liable if it has a policy of inaction and such inaction amounts to a

13   failure to protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)

14   (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  Thus, to impose liability against a

15   county for its failure to act, a plaintiff must show: (1) that a county employee violated the

16   plaintiff's constitutional rights; (2) that the county has customs or policies that amount to

17   deliberate indifference; and (3) that these customs or policies were the moving force behind the

18   employee's violation of constitutional rights.  *Long*, 442 F.3d at 1186.

19         Supervisory officials may also be liable under § 1983 for violations of a plaintiff's

20   constitutional rights but "may not be held liable for the unconstitutional conduct of their

21   subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676.  The term

22   "supervisory liability" is therefore something of a "misnomer" because "[e]ach Government

23   official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677;

24   *see also Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013)

25   ("Vicarious liability may not be imposed on a supervisor for the acts of lower officials in a section

26   1983 action.").  Thus, a supervisor may be held liable for under § 1983 upon a showing of either

27   "(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal

28   connection between the supervisor's wrongful conduct and the constitutional violation." *Starr*,

1    652 F.3d at 1207; *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is

2    only liable for constitutional violations of his subordinates if [he] . . . directed the violations, or

3    knew of the violations and failed to act to prevent them."). The requisite causal connection may

4    be proved by (1) the supervisor's "own culpable action or inaction in the training, supervision, or

5    control of subordinates;" (2) his "acquiescence in the constitutional deprivation of which a

6    complaint is made;" or (3) "conduct that showed a reckless or callous indifference to the rights of

7    others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

8    **B.    The County Defendants**

9          In challenging Plaintiff's first cause of action, the County Defendants note that Plaintiff

10   names "all defendants" and lists a number of different alleged constitutional violations, yet he fails

11   to state which Defendant committed which violation. Cnty. Defs.' Mot. at 6. Similarly, Plaintiff's

12   second cause of action names Sheriff Freitas as well as the County, apparently in their supervisory

13   and municipal capacities, but does not state specifically how each violated Plaintiff's rights. In

14   response, Plaintiff contends that "Freitas is able to ascertain which facts pertain to his conduct: the

15   holding of Mr. Chaves on a 'parole hold' when he was not on parole, and the denial of his access

16   to legal materials." Opp'n at 5-6. The County Defendants argue that neither of these allegations

17   support a viable § 1983 claim against Sheriff Freitas, nor does Plaintiff allege any facts

18   establishing that Sheriff Freitas was personally involved in Plaintiff's case, or that he personally

19   engaged in any culpable action or inaction causing Plaintiff's alleged civil rights violations. *Id.* at

20   6-9. Cnty. Defs.' Mot. at 6-9. They additionally contend that any claim against Sheriff Freitas

21   regarding the parole hold is foreclosed based on absolute or qualified immunity grounds. *Id.* at 10.

22         With respect to Plaintiff's claims against Sonoma County, the County Defendants assert

23   that Plaintiff fails to allege any facts to support municipal liability. *Id.* at 12. Specifically, the

24   County Defendants argue that Plaintiff does not identify what County policy or practice he

25   challenges, or how that policy or practice was deficient, caused Plaintiff harm, or amounted to

26   deliberate indifference of Plaintiff's constitutional rights. *Id.* at 13. Plaintiff's Opposition is short

27   on specific arguments about the County's involvement. Plaintiff appears to attribute the denial of

28   access to legal materials and his parole holding to the County, stating that "[f]or purposes of a

United States District Court
Northern District of California

7

complaint, plaintiff has adequately pled the fact that this unlawful conduct of the jail, which is controlled by Sheriff Freitas, was the result of his policies, customs and practice."  Opp'n at 5-6. It thus appears that Plaintiff claims that Sheriff Freitas' acts are attributable to Sonoma County and vice versa.  The Court considers whether Plaintiff states a claim for relief for his allegations concerning the denial of access to legal materials and the parole hold.

> 1.    Denial of Access to Legal Materials

As to Plaintiff's claim that Sheriff Freitas and the County violated § 1983 by denying him access to legal materials, the Court finds that Plaintiff has failed to state a claim.

First, to state a claim under § 1983, Plaintiff must, as a threshold matter, allege that he was deprived of a constitutional right.  Plaintiff essentially seems to allege a "*Bounds* claim," named after *Bounds v. Smith*, where the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  430 U.S. 817, 828 (1977) (footnote omitted).  The Supreme Court later clarified that "[i]nsofar as the right vindicated by *Bounds* is concerned, 'meaningful access to the courts is the touchstone,' . . . and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (quoting *Bounds*, 430 U.S. at 823).  The Court noted that a plaintiff might show, "for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint."  *Id.*  But without sufficiently plead allegations that the lack of access injured Plaintiff, a *Bounds* claim will not lie. *See Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (affirming the district court's grant of summary judgment where the plaintiff did not "allege[] injury, such as inability to file a complaint or defend against a charge" resulting from deficiencies in access (quoting *Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004)); *see also Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011).

United States District Court
Northern District of California

1    Plaintiff alleges that while he was in custody, "he repeatedly requested access to forms and

2    legal materials necessary to challenge and appeal his incarceration[,]" but was denied access.

3    Compl. ¶ 23.  While this allegation suggests that the forms and legal materials were "necessary"

4    for Plaintiff to challenge and appeal his incarceration, the County Defendants have put forward

5    judicially noticeable evidence showing that Plaintiff was represented by counsel at the proceedings

6    before the Sonoma County Superior Court.  *See* Bruggisser Decl., Ex. C, Dkt. No. 26.[2]  The same

7    document also shows that Plaintiff had two court appearances while he was in custody, which

8    were also attended by his counsel, who is also the attorney of record in this case.  *Id.*  This

9    undermines the plausibility of Plaintiff's limited allegations indicating that the forms and legal

10   materials were necessary or that he suffered harm without them.  At this time, Plaintiff's bare-

11   bones allegations for this claim do not show that he is entitled to relief.

12        Second, Plaintiff fails to allege that Sheriff Freitas was personally involved in denying

13   Plaintiff access to legal materials or that he engaged in unlawful conduct.  Plaintiff alleges that

14   Sheriff Freitas negligently supervised the officers involved in holding Plaintiff in custody, and that

15   Freitas was "the policymaker" on the matters "relating to the customs, policies and practices of the

16   Sonoma County Sheriff's Department, including but not limited to those related to training,

17   supervision, hiring, and discipline."  Compl. ¶¶ 7, 25.  But Plaintiff does not describe what actions

18   Sheriff Freitas took or failed to take that resulted in a violation of Plaintiff's constitutional rights.

19   He does not allege that Sheriff Freitas directed his subordinates to deprive Plaintiff of access to

20   legal materials, or that Freitas set in motion acts that he knew or should have known would cause

21   subordinates to violate Plaintiff's rights.  Nor does Plaintiff allege that Sheriff Freitas knew that a

22   subordinate was depriving Plaintiff of access to legal materials but then failed to act to prevent that

23   subordinate from depriving Plaintiff of his rights.  Without more, Plaintiff's allegations fail to

24   _____

25   [2] The Court may take judicial notice of matters that are either (1) generally known within the trial
     court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to
26   sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Proper subjects
     of judicial notice when ruling on a motion to dismiss include court documents filed in other courts,
27   *see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Plaintiff did
     not object to taking judicial notice of this document.  Accordingly, the Court takes judicial notice
28   of this criminal docket.  *See* Bruggisser Decl., Ex. C.

1    show that Sheriff Freitas was personally involved in the purported constitutional deprivation or

2    that there is a sufficient causal connection between his wrongful conduct and a violation of

3    Plaintiff's rights.  *Starr*, 652 F.3d at 1207; *see also Wesley v. Davis*, 333 F. Supp. 2d 888, 892

4    (C.D. Cal. 2004) ("an individual's general responsibility for supervising the operations of a prison

5    is insufficient to establish personal involvement." (quotation omitted)).

6          2.    Parole Hold

7          The County Defendants also move to dismiss Plaintiff's § 1983 claim related to the parole

8    hold.  They contend that Plaintiff fails to allege facts showing that the County had a policy or

9    practice related to the parole hold or that they were deliberately indifferent to violations of

10    Plaintiff's constitutional rights.  Additionally, they assert that qualified or absolute immunity bars

11    Plaintiff's § 1983 claim against Sheriff Freitas given the facially valid detainer.[3]

12          a.    *Failure to State a Claim under § 1983*

13          "A prisoner's petition for damages for excessive custody can be a legitimate § 1983

14    claim."  *Haygood v. Younger*, 769 F.2d 1350, 1359 (9th Cir. 1985) (en banc).  However, "[i]t is

15    not every erroneous administration of state law that results in a denial of due process."  *Id.* at

16    1357.  A wrongful detention can ripen into a due process violation if "'it was or should have been

17    known [by the defendant] that the [plaintiff] was entitled to release.'"  *Gant v. Cnty. of Los*

18    *Angeles*, 772 F.3d 608, 620 (9th Cir. 2014) (quotation omitted; alterations in original).  But to state

19    a claim for such a violation, a plaintiff must allege facts showing that the defendant's customs or

20    policies amounted to deliberate indifference to constitutional rights and that these policies were

21    the moving force behind the violations.  *Id.*  To establish deliberate indifference, a plaintiff must

22    show that the defendant actually knew of the risk of harm, yet failed to take reasonable steps to

23    eliminate that risk.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Bryan Cnty. v. Brown*, 520

24    U.S. 397, 341 (1997) (deliberate indifference is "a stringent standard of fault, requiring proof that

25

26    _____

27    [3] The County Defendants request that the Court take judicial notice of a copy of the "Detainer"
       from the California Department of Corrections and Rehabilitation dated November 14, 2012.
       Bruggisser Decl. ¶ 3.  Plaintiff objects to this request.  Opp'n at 7.  The Court declines to rule on
28     this issue at this time.  The Court is able to decide Defendants' Motions on the basis of the
       allegations in Plaintiff's Complaint, and this document does not factor into the Court's decision.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    a municipal actor disregarded a known or obvious consequence of his action."); *Starr*, 652 F.3d at

2    1206-07 ("a plaintiff may state a claim against a supervisor for deliberate indifference based upon

3    the supervisor's knowledge of and acquiescence in unconstitutional conduct by his . . .

4    subordinates").

5        "Cases holding that an incarceration violated the Due Process Clause because defendants

6    should have known the plaintiff was entitled to release fit at least one of two categories: (1) the

7    circumstances indicated to the defendants that further investigation was warranted, or (2) the

8    defendants denied the plaintiff access to the courts for an extended period of time." *Gant*, 772

9    F.3d at 621 (quotation omitted).  Furthermore, a public entity can be liable under the Fourteenth

10   Amendment for failing to "institut[e] readily available procedures for decreasing the risk of

11   erroneous detention." *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (failure to instigate

12   procedures to alleviate problem of detaining individuals on the wrong warrant could constitute a

13   "policy" where policymakers knew this problem was "not uncommon").

14       Turning to the case at hand, as an initial matter, Plaintiff does not explain how his

15   constitutional rights were violated as a result of the parole hold.  Presumably, Plaintiff alleges a

16   Fourteenth Amendment claim for deprivation of his liberty without due process of law, *see*

17   Compl. ¶¶ 29(b) & 36(b), but Plaintiff does not explain how Defendants violated his due process

18   rights.  Plaintiff alleges no facts indicating that the County Defendants understood the situation he

19   was in or that they denied him an opportunity to be heard.  Indeed, Plaintiff admits that Sheriff

20   Freitas "does not decide who is on parole or not," and provides no allegations that the County was

21   otherwise responsible for making such a determination.  Opp'n at 6.  The criminal docket further

22   shows that Plaintiff appeared before the Superior Court on several occasions.  Bruggisser Decl.,

23   Ex. C.  Defendants also submitted judicially noticeable documents showing that Plaintiff had at

24   least two hearings before the California Board of Parole Hearings on December 7 and 21, 2012.

25   *Id.*, Exs. D, E.[4]  At any of those appearances Plaintiff could have informed the Court or the Board

26

27   ───────────────

28   [4] The Court takes judicial notice of these documents pursuant to Federal Rule of Evidence 201(b).
     *See Reyn's Pasta Bella*, 442 F.3d at 746 n.6.  Plaintiff did not object to the County Defendants'
     request for judicial notice of these documents.

of his situation, but there are no allegations that he did so.

To the extent Plaintiff alleges that the County Defendants were deliberately indifferent to his due process rights, Plaintiff provides no allegations that would indicate that either Sheriff Freitas or the County knew or had reason to know that Plaintiff was improperly detained on a parole hold.  Consequently, Plaintiff has failed to allege how the County Defendants were deliberately indifferent to his rights.  *See Daniels v. Williams*, 474 U.S. 327, 330-32 (1986) (to recover under § 1983 action for violation of due process, plaintiffs must show more than negligence; they must show a higher level of culpability such as deliberate indifference); *Kennell v. Gates*, 215 F.3d 825, 829 (8th Cir. 2000) ("Even assuming that Gates's failure to investigate Sharon's mistaken identity claim further or to inquire about the results of the fingerprint analysis was unreasonable or negligent, those actions cannot amount to a constitutional violation for this six-day confinement" because plaintiff must show deliberate indifference); *Gray v. Cuyahoga Cnty. Sheriff's Dep't*, 150 F.3d 579, 583 (6th Cir. 1998) ("the principal question for the trier of fact will be whether Fuerst and/or Ussery acted with something akin to deliberate indifference in failing to ascertain that the Dwayne Gray they had in custody was not the person wanted by the Michigan authorities on the outstanding parole-violation warrant"); *cf. Green v. Baca*, 306 F. Supp. 2d 903, 916 (C.D. Cal. 2004) (finding that plaintiff may be able to prevail in showing that officials were deliberately indifferent where "plaintiff argues that defendant was on notice that he was entitled to be released . . . because he told sheriff's deputies on two occasions that the parole hold had been removed at the conclusion of his parole hearing and that he should be released.").

Plaintiff has failed to allege facts about what if anything was deliberately indifferent about the County Defendants' actions or that the County Defendants actively denied Plaintiff any opportunity to challenge his confinement.  *See Gant*, 772 F.3d at 620-21 ("Because Gant did not allege that he told the L.A. County defendants he had a judicial clearance form or that he otherwise called this case of mistaken identity to their attention, and because Gant was detained for the purpose of receiving process and did receive a prompt hearing, the district court correctly dismissed Gant's Fourteenth Amendment claim against the L.A. County defendants.").  Further, Plaintiff has failed to allege that Sheriff Freitas was personally involved in the purported

United States District Court
Northern District of California

deprivation or that there exists a sufficient causal connection between his wrongful conduct and that violation. Accordingly, Plaintiff has failed to state a § 1983 claim against the County Defendants related to his parole hold, and the Court dismisses this claim without prejudice.

### b.    Qualified or Absolute Immunity

Assuming Plaintiff can allege facts to make out a § 1983 claim related to the parole hold, the County Defendants also assert that Sheriff Freitas is entitled to qualified or absolute immunity.[5] "[A]bsolute immunity is an extreme remedy, and it is justified only where any lesser degree of immunity could impair the judicial process itself." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012) (en banc). "The presumption is that qualified rather than absolute immunity should apply." *Slater v. Clarke*, 700 F.3d 1200, 1203 (9th Cir. 2012). "[A]bsolute freedom from the threat of unfounded lawsuits . . . is the rare exception to the rule." *Meyers v. Contra Costa Cnty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1158 (9th Cir. 1987). In light of the foregoing, the Court first considers whether Sheriff Freitas is entitled to the lesser degree of immunity, i.e., qualified immunity, and then whether absolute immunity applies.

### i.    Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011). An official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal.

---

[5] Local governmental units are not entitled to immunity. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993) ("municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983"); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 n.6 (9th Cir. 2001).

United States District Court
Northern District of California

1   *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007).  Courts exercise their sound discretion in

2   deciding which of the two prongs of the qualified immunity analysis should be addressed first in

3   light of the circumstances in the particular case at hand.  *al-Kidd*, 131 S. Ct. at 2080.

4          As noted above, Plaintiff fails to allege facts that show the County Defendants violated his

5   constitutional rights, but he also fails to allege facts that a "reasonable official" in Sheriff Freitas'

6   position "would have understood that what he is doing violates that right.'"  *Mattos*, 661 F.3d at

7   442 ("Qualified immunity shields an officer from liability even if his or her action resulted from a

8   mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

9   (quotation and internal marks omitted)).  There is no indication from the facts alleged in Plaintiff's

10  Complaint that a reasonable official in Sheriff Freitas' position would have realized his conduct

11  violated Plaintiff's rights.  While Plaintiff asserts that he was not on parole on November 14, 2012

12  (Compl. ¶ 19), he does not assert that Sheriff Freitas knew this fact or that it was in some other

13  way obvious that Plaintiff was not on parole.  Nor does Plaintiff allege facts suggesting that it was

14  Sheriff Freitas' duty to investigate a parole hold, especially one that Plaintiff has not alleged was

15  in some way facially invalid or in some other way may have put Sheriff Freitas or the jail on

16  notice that Plaintiff should not be held.  There are no facts alleging the Plaintiff or anyone else told

17  Sheriff Freitas, the jail, or any other County personnel that he was not on parole and should not be

18  subject to the parole hold.  To avoid the qualified immunity defense, Plaintiff must allege facts

19  demonstrating how Sheriff Freitas violated Plaintiff's constitutional rights and that a reasonable

20  officer in Sheriff Freitas' position would have known that his conduct was unlawful.  As Plaintiff

21  fails to allege such facts, his § 1983 claim related to his parole hold is dismissed without prejudice.

22                          ii.      *Absolute Immunity*

23          Finally, the County Defendants also assert that Sheriff Freitas is entitled to absolute

24  immunity.  They rely on the Ninth Circuit's decision in *Engelbretson v. Mahoney*, which held that

25  prison officials who enforce facially valid courts order are entitled to absolute immunity even if

26  the prisoner claims that the order is invalid or later overturned.  724 F.3d 1034, 1039 (9th Cir.

27  2013).  The County Defendants ask this Court to apply *Engelbretson* to find that the "jail officials

28  detained Plaintiff based on a facially valid 'no bail' parole hold that was issued by the [California

14

Department of Corrections and Rehabilitation] on November 14, 2012, pursuant to [Penal Code] § 3056." Cnty. Defs.' Mot. at 10. Plaintiff's Complaint indicates that the jail held him until the parole hold was lifted, indicating that the jail held Plaintiff as a result of the parole hold and related detainer. Compl. ¶ 22; Opp'n at 7 ("The jail held Mr. Chavez for 60 days claiming that it had a valid detainer."). Additionally, the Complaint indicates that people outside of the jail believed that Plaintiff was subject to a parole hold, including as indicated in the criminal docket, which reflects that Plaintiff was subject to a parole hold. Bruggisser Decl., Ex. C.

In *Engelbretson*, the Ninth Circuit joined with several other circuits to hold that "prison officials charged with executing facially valid court orders enjoy absolute immunity from § 1983 liability for conduct prescribed by those orders." 724 F.3d at 1039. The Court of Appeals favorably cited the Eighth Circuit's opinion of *Patterson v. Von Riesen*, 999 F.2d 1235, 1239-41 (8th Cir. 1993), where the plaintiff was convicted of "a crime for which he was neither charged nor indicted," but was subsequently released from custody after a district court granted his petition for habeas corpus. *Id.* at 1236-37. The plaintiff filed suit against the wardens of the penal institution at which he was confined for wrongfully confining him and failing to investigate or approve his requests for parole. *Id.* In considering his claims, the Eighth Circuit found "that the wardens are cloaked with absolute immunity for continuing to incarcerate a prisoner pursuant to a valid court order in the face of his claim that he was wrongfully convicted." *Id.* at 1239.

The Eight Circuit based its conclusion on the Supreme Court's two-step approach to absolute immunity. First, it found "that at common law, jailers were absolutely immune from damages for confining a prisoner pursuant to a valid order of confinement." *Id.* at 1239-40. A number of cases supported the Eighth Circuit's conclusion, including *Francis v. Lyman*, 216 F.2d 583 (1st Cir. 1954), which noted that the "the privilege of a jailor to hold a prisoner pursuant to a judicial process regular on its face and issued by a court of competent jurisdiction 'quite as time-honored in the Anglo-American common law as is the immunity of members of the legislature and of judges from civil liability for acts done within the sphere of their judicial activities.'" *Patterson*, 999 F.2d at 1239 (quoting *Francis*, 216 F.2d at 588-89 and collecting cases).

Second, the Eight Circuit found that "absolute immunity is necessary" for three primary

United States District Court
Northern District of California

15

United States District Court
Northern District of California

reasons. *Id.* at 1240. "First, because the judge and parole officers have absolute immunity, wardens are likely to be the focus of suits challenging the fact of confinement." *Id.* "Second, such liability is simply unfair. Whether or not the warden believes a prisoner's conviction to be invalid, he is still under a court order to confine the prisoner." *Id.* "Finally, such suits present a serious threat to the integrity of the judicial process. As one court has noted, '[t]he fearless and unhesitating execution of court orders is necessary if the court's authority and ability to function are to remain uncompromised.'" *Id.* (citing *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 765 (9th Cir. 1987)). Finding "nothing counsels against absolute immunity for jailers in § 1983 actions alleging wrongful confinement[,]" the court concluded "that a warden is absolutely immune from damages flowing from the fact of a prisoner's incarceration, when that incarceration occurs pursuant to a facially valid order of confinement." *Id.* at 1241; *cf. Henry v. Sanchez*, 923 F. Supp. 1266, 1272 (C.D. Cal. 1996) (distinguishing *Patterson* because no court order was involved and noting "[t]he Court, moreover, is not aware of any decision in this circuit providing absolute immunity to a state prison warden in [a] civil rights action.").

It does not appear that the Ninth Circuit has specifically addressed whether a facially valid detainer and parole hold, rather than a court order, is sufficient to establish absolute immunity. However, in *Hoffman v. Halden*, the Ninth Circuit noted that:

> We think the failure of a jailor or keeper to release a prisoner held on a warrant or commitment cannot be the basis for a civil rights action regardless of allegations of malice, motive or intent. His act is required by law. Even if the statute were later held void or the conviction later set aside, so long as he acted under authority of the writ or warrant, he was performing a duty which the law at that time required him to perform.

268 F.2d 280, 300 (9th Cir. 1959), *overruled on other ground by Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962). From this analysis, the key factor appears to be that an official should not be held liable for something s/he was bound to do by law. As the Ninth Circuit noted in a related context, "prison officials have a duty to enforce a sentencing order until the order is vacated or the prisoner otherwise becomes eligible for release." *Stein v. Ryan*, 662 F.3d 1114, 1120 (9th Cir. 2011).

Considering the foregoing reasoning in relationship to this case, the Court notes that Plaintiff alleges no facts suggesting that (1) Sheriff Freitas and the jail acted outside of what was

required by the parole hold/detainer; (2) that something about the detainer would indicate that it was not facially valid; or (3) that Sheriff Freitas or the jail could have released Plaintiff while the parole hold/detainer was in place. *See Acasio v. San Mateo Cnty. Sheriff's Office*, 2015 WL 333011, at *5 (N.D. Cal. Jan. 23, 2015) (plaintiff failed to state a § 1983 claim against defendants for executing the three-month jail sentence where the complaint did not contain any allegations that the order imposing the sentence was facially invalid).  Furthermore, Plaintiff does not dispute that the California Department of Corrections and Rehabilitation issued the detainer, not Sheriff Freitas or the County.  Perhaps Plaintiff has a basis to allege that Sheriff Freitas could have released him regardless of the parole hold, but Plaintiff has not done so.  Rather, Plaintiff appears to allege that it was the parole hold that made it so the jail could not release him.  Compl. ¶ 22 ("Plaintiff was unable to post bail and obtain release from custody because a 'parole hold' was placed on him based on the his [sic] arrest on November 14, 2012."); Opp'n at 7 ("The jail held Mr. Chavez for 60 days claiming that it had a valid detainer.").  Put another way, Plaintiff has not alleged that Sheriff Freitas or the jail acted outside of what the law required, or that they could have acted differently while the detainer and parole hold remained in place.

Nonetheless, a "grant of absolute immunity should be applied cautiously[,]" especially where the higher courts have not specifically addressed the issue. *Lokey v. Richardson*, 534 F. Supp. 1015, 1020 (N.D. Cal. 1982).  Absolute immunity "is strong medicine, justified only when the danger of officials' being deflected from the effective performance of their duties is very great." *Forrester v. White*, 484 U.S. 219, 230 (quotation and internal marks omitted).  "The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993); *Slater v. Clarke*, 700 F.3d 1200, 1203 (9th Cir. 2012) ("An official seeking absolute immunity bears the burden of showing that it is justified.").  Furthermore, the Court notes that while there is a presumption that qualified immunity applies to government officials, there is no such presumption that absolute immunity applies unless the Plaintiff alleges certain facts.

The County Defendants argue that "[j]ail officials, when enforcing parole holds under [California Penal Code] § 3056, are performing functions necessary to the judicial process[,]" and

"[t]o ensure this process, jail officials must be able to reasonably rely on facially valid orders from other judicial agencies and must not be burdened with having to assume duties that are imposed on other agencies, such as the [California Department of Corrections and Rehabilitation] . . . by being required to independently investigate and scrutinize valid parole holds."  Cnty. Defs.' Mot. at 10. The Court is persuaded by this assessment as well as the precedents and reasoning of *Engelbretson*, *Stein*, *Hoffman*, and *Patterson* that an official acting pursuant to a facially valid detainer and parole hold should be immune from liability.  Accordingly, to the extent Plaintiff asserts claims against Sheriff Freitas for holding Plaintiff in custody pursuant to a facially valid detainer, Sheriff Freitas is entitled to absolute immunity.  The Court notes, however, that Plaintiff's Complaint is vague about the precise claims against Sheriff Freitas, and to the extent Plaintiff can allege plausible facts demonstrating that Sheriff Freitas' actions in the circumstances of this case are not subject to absolute immunity, he may do so in an amended complaint.

### 3.   Summary

In sum, the Court finds that Plaintiff has failed to assert a claim against Sheriff Freitas or the County as he has not alleged facts showing that they violated his constitutional rights related to the denial of access to legal materials or the parole hold.  Plaintiff has not alleged plausible facts showing that the denial of access to legal materials harmed him, nor has he alleged facts demonstrating how Sheriff Freitas or the County were deliberately indifferent to Plaintiff's constitutional rights in holding him under the parole hold.  Furthermore, Plaintiff has not alleged facts showing that Sheriff Freitas is not entitled to qualified immunity or absolute immunity. Accordingly, Plaintiff's first and second causes of action against the County Defendants are dismissed without prejudice.[6]

---

[6] In their Reply, the County Defendants also argue that the statute of limitations bars Plaintiff's claims.  Cnty. Defs.' Reply at 5.  First, it is inappropriate for the County Defendants to raise this argument in their Reply.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").  Second, the County Defendants' argument is flawed as Plaintiff's § 1983 claims are subject to a two-year statute of limitations, not a one year statute of limitations as the County Defendants argue.  Specifically, as § 1983 does not contain its own statute of limitations, federal courts traditionally apply the forum state's statute of limitations for personal injury actions, except to the extent inconsistent with federal law.  *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014). As of January 1, 2003, the California statute of limitations for personal injury claims is two years

United States District Court
Northern District of California

**C.      The City Defendants**

The City Defendants primarily challenge Plaintiff's Complaint on two grounds: (1) Plaintiff failed to allege facts demonstrating how the City, Chief Williams, or its officers have a policy or practice of deliberate indifference; and (2) the officers and Chief Williams are entitled to qualified immunity.[7]

1.      Failure to State a Claim Under § 1983

Official-capacity suits filed against state officials are merely an alternative way of pleading an action against the entity of which the defendant is an officer. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky*, 473 U.S. at 165; *see also Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) ("'Suits against state officials in their official capacity therefore should be treated as suits against the State.'" (quoting *Hafer*, 502 U.S. at 25)).   In an official-capacity suit, the plaintiff must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. *See Hafer*, 502 U.S. at 25.  Likewise, "[a] government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

Plaintiff does not state whether he sues Officers Page and Accornero in their personal capacities, but his Complaint indicates his intent to sue them in their official capacities as Petaluma Police Department officers and agents of the City of Petaluma. *See* Compl. ¶¶ 8-9; 11-13.  Plaintiff sues Chief Williams in his official and individual capacities. *Id.* ¶ 6.  Accordingly, to

---

instead of one. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (citing Cal. Civ. Proc. Code § 335.1).  Therefore, "a § 1983 action filed in California today would clearly be governed by California's new two-year statute of limitations for personal injury actions[.]" *Id.*; *Thompson v. City of Shasta Lake*, 314 F. Supp. 2d 1017, 1024 (E.D. Cal. 2004) ("although the statutory period for false arrest and imprisonment claims is specifically provided for in [Cal. Civ. Proc. Code] § 340(c), the[ related § 1983 claims]. . . are governed by the new, two-year residual period.").

[7] The City Defendants similarly have tried to assert new arguments in their Reply, contending that Chief Williams and Officers Page and Accornero should be dismissed in their official capacities as redundant defendants.  City Defs.' Reply at 3 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  As noted in the previous footnote, the Court will not consider arguments raised for the first time in a Reply.  Nonetheless, to the extent this argument relates to arguments previously asserted, e.g., that Plaintiff has failed to state a claim against these Defendants in their official capacities, the Court reviews those arguments.

19

United States District Court
Northern District of California

1   state a § 1983 claim against the City Defendants, Plaintiff must allege facts demonstrating that a

2   policy, practice, or custom of the City of Petaluma is the moving force behind a violation of his

3   constitutional rights.  The City Defendants contend that Plaintiff's Complaint fails to do so.

4   In response, Plaintiff contends that he "detailed specific facts showing that Page and

5   Accornero unlawfully entered plaintiff's home, detained him, arrest[ed] him, and search[ed] his

6   house and seized his accounts."  Opp'n at 4.  "Plaintiff then alleged that this unlawful conduct was

7   the result of the City and Chief's negligent hiring, and failure to train and supervise its officers."

8   *Id.*  Plaintiff indicates that these allegations are enough and contends that no additional proof is

9   needed at this stage.

10   While Plaintiff is correct that no proof is needed at this stage in the proceedings, he has not

11   alleged adequate facts demonstrating that he has a viable claim against the City Defendants.

12   Plaintiff does not have to cite a "written Petaluma Police Department policy expressly stating that

13   officers should be inadequately trained or supervised," Opp'n at 4, but he should be able to allege

14   what facts demonstrate a practice or custom that was the moving force behind his constitutional

15   rights.  *See Lee*, 250 F.3d at 681-82.  Plaintiff has not alleged what was negligent about the City

16   and Chief William's hiring practices, or how their failure to train and supervise officers was the

17   moving force behind the violations of Plaintiff's rights.  As the City Defendants argue, Plaintiff's

18   Complaint "does not allege facts showing that policymakers were aware of any constitutional

19   violations and failed to properly respond, nor does it allege facts showing that the municipality

20   was given notice of the possibility that its employees were violating citizens' constitutional rights,

21   and failed to make any meaningful investigation into the charges, or failed to discipline

22   subordinates who violated civil rights; nor does it show supervisory knowledge and/or

23   acquiescence."  City Defs.' Reply at 3.

24   Plaintiff's allegations are conclusory and fail to show how the City Defendants were

25   deliberately indifferent or otherwise had a policy or practice that was the moving force behind his

26   constitutional rights.  For instance, Plaintiff has not alleged facts indicating the City Defendants'

27   actions or failure to act led to some known or obvious violation of Plaintiff's constitutional rights.

28   Rather, Plaintiff admits in his Complaint that the officer Defendants arrested Plaintiff and searched

United States District Court
Northern District of California

and seized him and his property without a warrant because they believed that Plaintiff was on active parole.  Compl. ¶ 18.  This does not show that the City Defendants knew that their actions violated Plaintiff's rights or that such a risk was obvious.  Nor does it support the notion that additional training or different hiring practices would have prevented a constitutional injury. Plaintiff's Complaint, as currently alleged, fails to show that the City Defendants had a policy or practice that was the moving force behind Plaintiff's alleged constitutional deprivation.  *Cf. Lee*, 250 F.3d at 682-83 (plaintiff stated a claim by alleging that the city was aware police officers often took into custody persons who were misidentified, particularly persons with mental disabilities, and the city deliberately failed to properly train and supervise employees or to implement and maintain proper procedures to correct identify detainees, choosing instead to ignore the problem); *Starr*, 652 F.3d at 1208-12 ("Sheriff Baca failed to act to protect inmates under his care despite his knowledge that they were in danger because of culpable acts of his subordinates and despite his ability to take actions that would have protected them[,]" citing numerous paragraphs of plaintiff's complaint indicating that Sheriff Baca knew or reasonably should have known of the problem but failed to take action).

Accordingly, the Court finds that Plaintiff has failed to state a claim against the City Defendants for violations of § 1983.

2.    <u>Immunity</u>

Finally, to the extent Plaintiff asserts claims against Chief Williams and Officers Page and Accornero in their personal capacities, as presently alleged, Plaintiff's Complaint indicates that they are subject to qualified immunity.  As noted above, an official is entitled to qualified immunity unless a plaintiff alleges sufficient facts to show that the official violated a constitutional right and that the right was "clearly established" at the time of the challenged conduct.  *al-Kidd*, 131 S.Ct. at 2080.  A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson*, 483 U.S. at 640.

Plaintiff's Opposition does not address the City Defendants' arguments that Chief Williams and Officers Page and Accornero are entitled to qualified immunity.  The City

United States District Court
Northern District of California

1   Defendants focus on the second prong of the qualified immunity analysis, primarily arguing that

2   Page and Accornero are entitled to qualified immunity because "they reasonably believe[d] that

3   Plaintiff was on parole when they approached his residence on November 14, 2012[.]"  City Defs.'

4   Mot. at 19.  They point out that Plaintiff's Complaint likewise indicates that these actions were

5   taken because they believed Plaintiff was on parole.  *Id.* (citing Compl. ¶ 18).  They contend that

6   qualified immunity applies even if that belief was mistaken because the officers acted reasonably.

7   *Id.* (citing *Anderson*, 483 U.S. at 641).  They similarly assert that Chief Williams is entitled to

8   qualified immunity because there is no allegation suggesting that he could have reasonably

9   believed his conduct related to his policies, practices, or procedures was unlawful.  *Id.*

10          The Court agrees.  A warrantless entry into a home violates the Fourth Amendment unless

11   an exception to the Fourth Amendment warrant requirement applies, such as a reasonably

12   conducted parole search.  *Espinosa v. City & Cnty. of San Francisco*, 598 F.3d 528, 533 (9th Cir.

13   2010).  Where a parolee has signed a condition of parole allowing searches by law enforcement

14   without a warrant, an officer may conduct a warrantless search of the parolee and his residence

15   without offending the Fourth Amendment.  *See United States v. Knights*, 534 U.S. 112, 122

16   (2001); *Sanchez v. Canales*, 574 F.3d 1169, 1174 (9th Cir. 2009) ("There is no question ... that

17   parole and probation conditions are . . . categorically sufficient to justify the invasion of [a

18   parolee's or probationer's] privacy entailed by a home search.").  In this way, a reasonably

19   conducted parole search operates as an exception to the warrant requirement.  *Motley v. Parks*, 432

20   F.3d 1072, 1079 (9th Cir. 2005) (en banc).

21          In California, parolees are advised that their "residence and any property under [their]

22   control may be searched without a warrant at any time by any agent of the Department of

23   Corrections or any law enforcement officer."  Cal. Code Regs. tit. 15, § 2511(b)(4); *see also*

24   *United States v. Grandberry*, 730 F.3d 968, 981 (9th Cir. 2013) ("In fact, California has mandated

25   such a [parole] search condition for all of its parolees since 1977.").[8]  Furthermore, California has

26

27   [8] A parole search is valid if it complies with state law.  *United States v. Garcia-Cruz*, 978 F.2d
     537, 541 (9th Cir. 1992).  "Only after the meaning and scope of a [parole] search clause are
28   determined, under state law, does the federal Fourth Amendment analysis begin."  *United States v.*
     *King*, 736 F.3d 805, 806 n.3 (9th Cir. 2013), *cert. denied*, 134 S.Ct. 1492 (2014).

imposed on all its parolees a signed condition allowing searches by law enforcement without a warrant.  *See* Cal. Penal Code § 3067(a) ("Any inmate who is eligible for release on parole . . . shall agree in writing to be subject to search or seizure by a parole officer . . . at any time of the day or night, with or without a search warrant and with or without cause.").  Thus, in California, warrantless searches of a parolee and his residence are reasonable under the Fourth Amendment so long as they are not arbitrary, capricious, or harassing.  *See Samson v. California*, 547 U.S. 843, 856-57 (2006); *People v. Reyes*, 19 Cal. 4th 743, 753-54 (1998).

Plaintiff's Complaint provides no allegations suggesting that a reasonable official in either Officer Page's or Officer Accornero's position would have understood that his actions violated Plaintiff's constitutional rights.  The City Defendants assert Officers Page and Accornero believed that Plaintiff was on active parole.  City Defs.' Mot. at 19.  Plaintiff does not allege that it was unreasonable for Page and Accornero to have this belief, or that a reasonable officer in either of their positions would have thought otherwise.  An officer is not liable for acting on information supplied by another officer, even if that information later turns out to be wrong, if he has an objectively reasonable, good-faith belief that he is acting pursuant to proper authority. *Espinosa*, 598 F.3d at 535 (citing *Motley*, 432 F.3d at 1081-82 ("Effective law enforcement requires cooperation and division of labor to function. For that reason, law enforcement officers are generally entitled to rely on information obtained from fellow law enforcement officers." (citations omitted)).

For instance, in *Moore v. Vega*, the Second Circuit found that two parole agents were entitled to qualified immunity after they conducted a warrantless parole search of a home based on the mistaken belief that an absconded parolee resided there.  371 F.3d 110, 117-18 (2d Cir. 2004).  Specifically, the court found that these agents reasonably, albeit mistakenly, believed they were conducting a lawful parole search of a parolee's residence because they had received information from the Bureau of Alcohol, Tobacco, Firearms, and Explosives that an absconded parolee resided at the house. *Id.* at 117.  The court emphasized that the agents' reliance on this information was

objectively reasonable because as a general matter, "[i]nformation received from a law enforcement source may properly be relied on in the monitoring of convicted individuals released on probation or parole." *Id.* "Defendants' reasonable belief that this was the parolee's residence therefore extended until they were presented with convincing evidence that the information they had relied upon was incorrect." *Id.* at 118.

*Moore* thus indicates that Officers Page and Accornero are entitled to qualified immunity under the general principle that law enforcement officers rightfully rely on information obtained from other officers. However, in addition to this principle, courts in the Ninth Circuit also ask: "Was it objectively reasonable for the officer to rely on the information he did in determining whether the plaintiff was on active parole and subject to warrantless searches?" *Torres v. Cnty. of Madera*, 2011 WL 6141080, at *8 (E.D. Cal. Dec. 9, 2011); *see also Motley*, 432 F.3d at 1082; *Willis v. Mullins*, 517 F. Supp. 2d 1206, 1224 (E.D. Cal. 2007) ("Qualified immunity thus boils down to whether it was reasonable for Defendants to rely on the information contained in the Parole Roster in order to determine if an individual is subject to a parole search condition.").

Plaintiff's Complaint alleges no facts suggesting that these Officers' reliance on the information provided to them was objectively unreasonable. While "all officers . . . have an ongoing duty to make appropriate inquiries regarding the facts received and to further investigate if insufficient details are relayed," there are no allegations showing that insufficient details were relayed or that there was anything else that indicated to Officers Page and Accornero that Plaintiff was not on active parole and thus not subject to parole searches. *Motley*, 432 F.3d at 1081 ("unless Griffin had 'some indication . . . that an investigation was inadequate or incompetent, [he was] not obliged to either undertake *de novo* investigations or to cross examine subordinates reasonably believed to be competent as to whether their investigations were negligent.'" (quoting *Cecere v. City of N.Y.*, 967 F.2d 826, 829 (2d Cir. 1992)).

At this point, Plaintiff's Complaint fails to allege facts indicating that reasonable officers in Defendants Page and Accornero's positions would have understood that their actions violated Plaintiff's constitutional rights. While Plaintiff asserts that he was not on parole on November 14, 2012, and had not been on parole since September 2012 (Compl. ¶ 19), he does not assert that

United States District Court
Northern District of California

Page and Accornero knew this fact, nor does he allege that they should have known that fact based on some other information that would have made it apparent that Plaintiff was not on parole.[9] Finally, as the City Defendants argue, without some indication that these or some other officers acted unreasonably in this or a similar context, Plaintiff cannot allege facts demonstrating that Chief Williams is not entitled to qualified immunity.  Specifically, without such facts, Plaintiff cannot show that a reasonable official in Chief William's position would have known that his actions or inactions related to the training, hiring, practices, and procedures of his department could violate citizen's rights.  Without allegations demonstrating that reasonable officials in these Defendants' positions would have understood that their actions or non-actions violated a clearly established right, Plaintiff fails to show that these Defendants are not entitled to qualified immunity.  *Cf. Torres*, 2011 WL 6141080, at *8; *Ruiz v. Flores*, 2015 WL 966148, at *15 (E.D. Cal. Mar. 4, 2015) (both refusing to find officials entitled to qualified immunity on defendants' motions to dismiss due to the lack of evidence at that stage from which to determine whether officials reasonably relied on information provided by another law enforcement agency); *but see al-Kidd*, 131 S.Ct. at 2080 ("Qualified immunity shields federal and state officials from money damages unless a plaintiff *pleads facts* showing" otherwise (emphasis added)).  Accordingly, the Court dismisses Plaintiff's § 1983 claims against Defendants Page, Accornero, and Williams.

### CONCLUSION

In light of the foregoing analysis, the Court **GRANTS** Defendants' Motions to Dismiss. Plaintiff's state law claims for negligence and false imprisonment are **DISMISSED WITH PREJUDICE**, and Plaintiff's first and second causes of action under 42 U.S.C. § 1983 are **DISMISSED WITHOUT PREJUDICE**.  Because Plaintiff may cure the pleading deficiencies in

---

[9] The City Defendants ask the Court to take judicial notice of the California Law Enforcement Telecommunications System's report that the Petaluma Police Department printed on November 14, 2012.  City Defs.' Req. for Judical Notice at 3, Dkt. No. 28-2; Green Decl., Ex. 3, Dkt. No. 28-1.  According to the City Defendants, the Petaluma Police Dispatch used this report to notify Officer Page that Plaintiff was on active parole.  City Defs.' Mot. at 4.  Although Plaintiff has not objected to the request for judicial notice, the Court does not presently find it appropriate to take judicial notice of this document.  There is inadequate support at this time to determine the nature of this document and whether it falls under the type of documents that the Court may take judicial notice of under Federal Rule of Evidence 201(b).

his first and second causes of action, the Court **GRANTS** Plaintiff leave to amend, consistent with this Order.  *See Lopez*, 203 F.3d at 1127.  Plaintiff shall file an amended complaint **by July 14, 2015**.

Plaintiff should also keep in mind that both the County Defendants and the City Defendants indicated that they had difficulty understanding which claims were asserted against which Defendants, and in their Reply the County Defendants requested the Court order Plaintiff to produce a more definite statement pursuant to Rule 12(e) in the event that the Court denied their motion to dismiss.  While Plaintiff's amended complaint should not be lengthy or overly detailed, it should address the concerns of this Order and be clear on which claims apply to which Defendants and why.

**IT IS SO ORDERED.**

Dated: June 16, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge