UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR CHAVEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF PETALUMA, et al.,<br><br>    Defendants. | Case No. 14-cv-05038-MEJ<br><br>**ORDER GRANTING SECOND MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 40, 43 |

## INTRODUCTION

Plaintiff Omar Chavez brings this civil rights action against the City of Petaluma, Chief Patrick Williams, and Officers Michael Page and Paul Accornero (the "City Defendants"), as well as the County of Sonoma and Sheriff Steve Freitas (the "County Defendants") (collectively "Defendants"), concerning alleged violations of Plaintiff's constitutional rights relating to his November 14, 2012 arrest and subsequent confinement. *See* Am. Compl., Dkt. No. 39. Pending before the Court are two Motions to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6): one by the County Defendants (Dkt. No. 40, "Cty. Defs.' Mot."), and the other by the City Defendants (Dkt. No. 43, "City Defs.' Mot."). Plaintiff filed an Opposition to both Motions[1] (Dkt. No. 49), and Defendants filed Replies (Dkt. No. 50, "City Defs.' Reply"; Dkt. No. 51, "Cty. Defs.' Reply"). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Defendants' Motions for the reasons set forth below.

//

---

[1] Although Plaintiff technically filed a "consolidated response" to both Motions, his Opposition only refers to the arguments raised by the County Defendants; "As to the City of Petaluma, plaintiff submits the motion on his [First Amended Complaint]." Opp'n at 2.

**BACKGROUND**

On November 14, 2012, Petaluma Police Department Officers Michael Page and Paul Accornero entered Plaintiff's residence at 103 Dana Street, Petaluma, and arrested him. Am. Compl. ¶¶ 14, 15, 17. Plaintiff alleges Page and Accornero had previously entered onto the porch of his residence without a warrant and, while standing outside the front door, eavesdropped on and "surreptitiously recorded" conversations between Plaintiff and other persons within the residence. *Id.* ¶ 14. He alleges Page and Accornero then entered the residence without a warrant and unlawfully detained him and others at gunpoint. *Id.* ¶ 15. Page, Accornero, and other Petaluma Police Department officers searched the residence and seized various items. *Id.* ¶ 16. Plaintiff alleges Page stated in the Petaluma Police Department report on the matter that the officers acted without a warrant because they believed Plaintiff was on active state parole. *Id.* ¶ 18.

Plaintiff alleges he had not been on parole since September 2012. *Id.* ¶ 19. When the officers entered into his home, Plaintiff alleges he "expressly informed the officers that he was in fact no longer on parole." *Id.* ¶ 30. After Plaintiff informed the officers he was not on parole, Plaintiff alleges they "did not make a reasonable effort to determine whether or not [he] was on parole." *Id.* He alleges that Petaluma Police Department Chief Williams and the City of Petaluma were "aware that officers of the Petaluma Police Department had previously mistakenly determined that suspects were on state parole when they were not on parole, and defendant Williams, as the policymaker on this issue, failed to properly train officers of his department, or implement proper procedures, about how and when to make a determination of whether a suspect was on parole." *Id.* ¶ 32.

Following Plaintiff's arrest, Page, Accornero, and other Petaluma Police Department officers transported Plaintiff to the Sonoma County Jail. *Id.* ¶ 17. Criminal charges were filed against Plaintiff in the Sonoma County Superior Court. *Id.* ¶ 20. Plaintiff alleges he was unable to post bail and obtain release from custody because a "parole hold" was placed on him based on his November 14, 2012 arrest. *Id.* ¶ 22. Additionally, based on the conversations that Page and Accornero overheard while outside Plaintiff's residence, as well as the evidence they obtained inside the residence, Page obtained seizure warrants to seize all bank accounts in which Plaintiff

had an interest. *Id.* ¶ 21. A forfeiture case was also filed in the Sonoma County Superior Court seeking to forfeit Plaintiff's interest in all property seized. *Id.*

Plaintiff alleges that while in custody he repeatedly requested access to forms and legal materials necessary to challenge and appeal his incarceration, but he was denied access to these materials. *Id.* ¶ 22. He alleges that in November 2012, the Sonoma County Jail had a policy reducing the number of times an inmate could request legal materials from the law library to once every 30 days. *Id.* ¶ 42. Plaintiff alleges "this policy prevented him from effectively challenging his alleged parole status" and "prevented him from obtaining his release from custody earlier than 60 days." *Id.* Furthermore, Plaintiff alleges that he is "informed and believes . . . that the 30 day law library policy was in fact enacted at the jail for the purpose of frustrating attempts by inmates to effectively challenge their custodial status[.]" *Id.*

Additionally, Plaintiff alleges "he complained to jail personnel, on more than one occasion, that he was not in fact on parole and should not be held as a parole violator." *Id.* ¶ 38. He alleges "the Sonoma County Jail has the authority to release persons in custody on parole violations if they determine that a suspect is not in fact on parole[,]" based on the fact that this "actually happened to him—th[e] Sonoma County Jail personnel eventually, after plaintiff repeatedly complained that he was not on parole, looked into whether or not he was on parole, and determined that he was not and lifted the parole hold so that he could bail out of custody." *Id.* ¶ 40. Plaintiff alleges Sheriff Freitas was "the policymaker" related to these matters, and he failed to implement an appropriate policy or procedure, or train his personnel, to assure people were not held in custody unnecessarily. *Id.* ¶¶ 7, 37, 43.

On January 16, 2013, the parole hold against Plaintiff was lifted, at which time Plaintiff posted bail and was released from custody. *Id.* ¶ 22. It is not clear under what authority the parole hold was lifted, nor is it clear how or when it was discovered that Plaintiff was not on parole at the time of his arrest. The criminal charges against him were eventually dismissed, as well as the forfeiture case. *Id.* ¶ 24.

Plaintiff filed his initial Complaint on November 11, 2014, asserting claims under 42 U.S.C. § 1983, as well as state law claims for negligence and false imprisonment. Compl. ¶¶ 28-

46. Defendants filed Motions to Dismiss, and the Court dismissed with prejudice Plaintiff's state law claims as barred by the statute of limitations and dismissed without prejudice the § 1983 claims for failure to state a claim on which relief could be granted. Order on Mots. to Dismiss, Dkt. No. 38. The specific reasons for that initial dismissal are discussed more fully below.

On July 14, 2015, Plaintiff filed an Amended Complaint, which he contends "cured the prior defects as ordered by the court." Opp'n at 3. The Amended Complaint asserts (1) a § 1983 claim against the City Defendants for violations of his Fifth and Fourteenth Amendment rights for allegedly placing a parole hold on Plaintiff when he was not in fact on parole; and (2) a § 1983 claim against the County Defendants for violations of his Fifth and Fourteenth Amendment rights for being held in jail on a "parole hold" when he was not on parole, as well as for allegedly denying him access to legal materials. Am. Compl. ¶¶ 28-45.

Defendants' second Motions to Dismiss argue Plaintiff's Amended Complaint continues to suffer from the same issues as his initial Complaint. Plaintiff's Opposition is lackluster. In addition to not directly addressing the City Defendants' arguments, Plaintiff did not file a timely Opposition brief, causing the Court to issue an Order to Show Cause. Dkt. No. 46. Plaintiff's counsel responded to the Order and requested more time to respond to Defendants' Motions. Dkt. No. 47. The Court discharged the Order to Show Cause and permitted Plaintiff a brief extension in time to respond as well as additional time for Defendants to file their Replies. Dkt. No. 48. All parties timely complied with that Order, albeit with Plaintiff's Opposition only addressing the County's arguments, with no direct discussion of the arguments posed by the City Defendants.[2]

**LEGAL STANDARD**

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

---

[2] Plaintiff and his counsel are admonished that failure to address argument in opposition can be considered a concession of the issue. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 n.7 (N.D. Cal. 2013) (collecting cases and finding a party's failure to address an argument concedes the issue raised).

4

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

**A.   Claims Against the City Defendants**

The City Defendants challenge Plaintiff's claims against them on the following grounds:

(1) as none of them are federal actors, Plaintiff may not maintain his Fifth Amendment due process claim; (2) under *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), the Court should dismiss Chief Williams and Officers Page and Accornero in their official capacities, because an official capacity suit against municipal officers is equivalent to a suit against the entity; (3) Plaintiff has failed to allege facts showing Officers Page and Accornero violated his Fourteenth Amendment rights, and that they are entitled to qualified immunity; (4) Plaintiff has failed to allege facts supporting a supervisory liability against Chief Williams, and that he is entitled to qualified immunity; and (5) Plaintiff fails to allege facts showing the City's actions or inactions violated Plaintiff's constitutional rights.

1. Fifth Amendment Claim

First, the City Defendants contend the Fifth Amendment does not apply to them as they are officers of a state, not the federal government. *Id.* The Court agrees. "The Due Process Clause of the Fifth Amendment . . . appl[ies] only to actions of the federal government—not to those of state or local governments." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Schweiker v. Wilson*, 450 U.S. 221, 227 (1981)). In *Lee*, the Ninth Circuit affirmed the dismissal of the plaintiffs' Fifth Amendment claim where they did not allege that any of the defendants were federal actors. *Id.* The same is the case here; Plaintiff does not allege facts supporting that any of the City Defendants are federal actors. Accordingly, Plaintiff's Fifth Amendment claim against them is **DISMISSED WITHOUT LEAVE TO AMEND**.

2. Official Capacity Claims against Page, Accornero, & Williams

Second, the City Defendants assert the Court should dismiss Chief Williams and Officers Page and Accornero in their official capacities. Under *Monell v. Department of Social Services of the City of New York*, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." 436 U.S. 658, 690 n.55 (1978). This is because "[i]n an official capacity suit, the government entity is the real party in interest and the plaintiff must show that the entity's policy or custom played a part in the federal law violation." *Vance v. Cty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all

respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166; *see also Butler v. Elle*, 281 F.3d 1014, 1023 n.8 (9th Cir. 2002) ("Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded."). Consequently, "if individuals are being sued in their official capacity as municipal officials *and* the municipal entity itself is also being sued, then the claims against the individuals are duplicative and should be dismissed." *Vance*, 928 F. Supp. at 996 (emphasis in original)); *see Roy v. Contra Costa Cty.*, 2015 WL 5698743, at *4 (N.D. Cal. Sept. 29, 2015) (adopting same).

As Plaintiff names the City as a defendant, it is unnecessary to also name Chief Williams and Officers Accornero and Page in their official capacities. Accordingly, Plaintiff's claims against Chief Williams and Officers Accornero and Page in their official capacities are **DISMISSED WITHOUT LEAVE TO AMEND**.

   3. <u>Individual Claims Against Page and Accornero</u>

Officers Page and Accornero also contend the Court should dismiss Plaintiff's individual claims against them. Individual liability under § 1983 differs from official liability in that "in a personal-capacity suit, the plaintiff is trying to place liability directly on the state officer for actions taken under state law." *Vance*, 928 F. Supp. at 996 (citing *Hafer v. Melo*, 502 U.S. 21, 25-27 (1991)). Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . . subjects, or causes to be subjected, any citizen of the United States . . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Thus, "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quotation and internal marks omitted). To prevail on a § 1983 claim, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution; (2) by a person acting under the color of state law. 42 U.S.C. § 1983.

There is no dispute that Defendants Page and Accornero were acting under the color of

state law, but they disagree that they violated Plaintiff's Fourteenth Amendment rights, arguing "Plaintiff does not explain how Defendants violated his due process rights or what they should have done differently that would have prevented his harm." City Defs.' Mot. at 11-12. Plaintiff's Opposition did not respond to these arguments, and his Amended Complaint is unclear; he does not explicitly state whether he intends his Fourteenth Amendment claim as a substantive due process claim or procedural due process claim, or both. He alleges generally "Plaintiff had and has a right to due process under the Fifth and Fourteenth Amendments not to be held in jail on a state 'parole' hold when he was not in fact on parole." Am. Compl. ¶ 29. Elsewhere, Plaintiff alleges he "expressly informed the officers that he was no longer on parole[,]" and Defendant Officers "did not make a reasonable effort to determine whether or not [he] was in fact on parole once he informed them he was not." *Id.* ¶ 30. He asserts "Defendant Page placed a 'parole' hold on [him] without . . . determining whether in fact [he] was actually on parole[,]" and consequently, "[t]he placement of the parole hold prevented [Plaintiff] from posting bail, and [from] thereby securing his release from county jail, for approximately 60 days." *Id.* ¶ 31.

The Due Process Clause of the Fourteenth Amendment provides, "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. This clause guarantees both procedural and substantive due process, protecting individuals against the deprivation of a liberty or property interest by the government. "A substantive due process inquiry focuses on 'what' the government has done," while a procedural due process analysis focuses upon "'how and when' the government did it." *Amsden v. Moran*, 904 F.2d 748, 753-54 (1st Cir. 1990) (citation omitted). "A § 1983 claim based upon procedural due process has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government, and (3) lack of process." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "[T]o establish a constitutional violation based on substantive due process, a plaintiff must show both a deprivation of liberty and conscience-shocking behavior by the government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006).

Plaintiff has not alleged adequate facts to support a Fourteenth Amendment due process claim because, among other things, he has failed to allege how Officer Accornero's or Page's

actions caused him to be deprived him of a liberty interest. First, while Plaintiff alleges Officer Page put a parole hold on Plaintiff without determining whether he was actually on parole, the City Defendants indicate Officer Page was not responsible for putting Plaintiff on a parole hold. City Defs.' Mot. at 13. The Court agrees; Plaintiff has not alleged plausible facts that Officer Page and/or Accornero were responsible for putting Plaintiff on a parole hold. *See Swift v. California*, 384 F.3d 1184, 1191 (9th Cir. 2004) ("In California, the issuance of a parole hold is an act by the parole agent that takes place independently of the parole decisional authority." (citing *In re Law*, 10 Cal. 3d 21, 23 n.2 (1973)). At the time of Plaintiff's arrest in November 2012, "California law vest[ed] the authority to place a parole hold, and set[] the constraints upon imposing such a hold, on '[t]he parole authority' and 'parole agent[s].'" *Turner v. Craig*, 2011 WL 2600648, at *8 (N.D. Cal. June 30, 2011), *aff'd*, 510 F. App'x 587 (9th Cir. 2013) (citing Cal. Penal Code § 3060; Cal Code Regs. tit. 15, § 2600 (repealed as of July 1, 2013)).

Second, even if Plaintiff could show these Officers somehow were responsible for implementing the parole hold, he has not shown their actions were the proximate cause of his 60 day confinement. While a wrongful detention can ripen into a due process violation after the lapse of a certain amount of time and where "'it was or should have been known [by the defendant] that the [plaintiff] was entitled to release,'" *Gant v. Cty. of Los Angeles*, 772 F.3d 608, 620 (9th Cir. 2014) (quotation omitted; alterations in original), Plaintiff has not shown these Officers were responsible for confining Plaintiff for an excessive amount of time. Plaintiff alleges the Officers only briefly detained Plaintiff after the arrest (Am. Compl. ¶ 17), but he has not alleged any facts suggesting they were responsible for holding him afterwards. Indeed, the Court previously took judicial notice of two "Summary of Revocation Hearing and Decision[s]" from the California Board of Parole Hearings relating to Plaintiff's case that took place on December 7 and 21, 2012 (Order on Mots. to Dismiss at 11 n.4),[3] demonstrating that Plaintiff had the opportunity to challenge his confinement and that it was not the Officers' actions that led to Plaintiff's continued confinement, but rather the Parole Board continued to authorize Plaintiff's confinement after the

---

[3] *See* Bruggisser Decl., Exs. D-E, Dkt. No. 26; *also available at* Second Bruggisser Decl., Exs. D-E, Dkt. No. 40-1.

initial hearing. *See* Bruggisser Decl., Ex. D; Second Bruggisser Decl., Exs. D. "Liability under § 1983 lies against a defendant only if he causes Plaintiff's deprivation of rights." *Marsh v. San Diego Cty.*, 432 F. Supp. 2d 1035, 1046 (S.D. Cal. 2006) (citing *Baker v. McCollan*, 443 U.S. 137, 142 (1979)). As these Officers were not responsible for Plaintiff's continued confinement, Plaintiff fails to allege plausible facts that the Officers deprived Plaintiff of his rights.

Finally, Plaintiff has still failed to allege plausible facts showing why the Officers might have had reason to know he was not on parole. Plaintiff alleges he informed them he was no longer on parole, Am. Compl. ¶ 30, but this allegation lacks plausibility because, among other things, in the claim he filed against the County he asserts "[o]n or about January 16, 2013 claimant learned that he was not in fact on parole when he was arrested." Bruggisser Decl., Ex. F, Dkt. No. 26; Req. for Judicial Notice, Dkt. No. 27.[4] This suggests Plaintiff did not know he was not on parole until several weeks after his arrest and undermines the plausibility of his allegations that he told the Officers he was not on parole.

As Plaintiff has already had an opportunity to amend his Complaint, and there is no indication he will be able to allege plausible facts against Officers Page and Accornero showing they violated his Fourteenth Amendment rights, Plaintiff's Fourteenth Amendment claim against them is **DISMISSED WITHOUT LEAVE TO AMEND**.

    4.    <u>Individual Claims Against Chief Williams</u>

The City Defendants also contend the Court should dismiss the individual claims against Chief Williams. Supervisory officials may be individually liable under § 1983 for violations of a plaintiff's constitutional rights but "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676. The term "supervisory liability" is therefore something of a "misnomer" because "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677; *see also Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013)

---

[4] The Court takes judicial of Plaintiff's claim against the County as Plaintiff has not opposed this request and the authenticity of this document is not disputed. *See, e.g.*, *Shaw v. City of Porterville*, 2015 WL 3795026, at *4 (E.D. Cal. June 17, 2015) (same).

("Vicarious liability may not be imposed on a supervisor for the acts of lower officials in a section 1983 action."). Instead, supervisors are "individually liable in § 1983 suits when culpable action, or inaction, is directly attributable to them." *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011).

Courts "have found supervisorial liability under § 1983 where the supervisor 'was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'" *Edgerly v. City & Cty. of S.F.*, 599 F.3d 946, 961 (9th Cir. 2010) (quoting *Lolli v. Cty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003)); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A supervisor is only liable for constitutional violations of his subordinates if [he] . . . directed the violations, or knew of the violations and failed to act to prevent them."). The requisite causal connection may be proved by (1) the supervisor's "own culpable action or inaction in the training, supervision, or control of subordinates;" (2) his "acquiescence in the constitutional deprivation of which a complaint is made;" or (3) "conduct that showed a reckless or callous indifference to the rights of others." *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

Plaintiff's Fourteenth Amendment claim against Chief Williams is unavailing. Even taking his allegations as true that Williams "was aware that officers of the Petaluma Police Department had previously mistakenly determined that suspects were on state parole when they were not on parole" and that he "failed to properly train officers of his department, or implement proper procedures, about how and when to make a determination of whether a suspect was on parole[,]" Am. Compl. ¶ 32, Plaintiff has not shown how implementing different procedures or training would have prevented a violation of his Fourteenth Amendment rights, as he has still not alleged how Officers Page and Accornero violated his due process rights. As discussed above, Plaintiff has alleged no plausible facts that the Officers excessively detained Plaintiff while he was in their custody or that they were responsible for his continued confinement.

As Plaintiff has only alleged a Fourteenth Amendment claim against Chief Williams, and he has not shown how Chief Williams directly, or through his deliberate indifference or acquiesce to unconstitutional conduct, caused Plaintiff to be deprived of a liberty interest, Plaintiff cannot maintain his Fourteenth Amendment claim against Chief Williams. Accordingly, Plaintiff's claim

11

against Officer Williams is **DISMISSED WITHOUT LEAVE TO AMEND**.

5. *Monell* Claims

A local government may only be liable under § 1983 for its own action or inaction, not that of its employees. *Monell*, 436 U.S. at 694; *see also Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). As such, a successful *Monell* claim must prove that a government entity's policy, practice, or custom is the "moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted). Liability based on a municipal policy may be satisfied one of three ways: (1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of "deliberate indifference" to constitutional rights; or (3) when a local government official with final policymaking authority ratifies a subordinate's unconstitutional conduct. *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (synthesizing Supreme Court authorities). To establish deliberate indifference, a plaintiff must show the defendant actually knew of the risk of harm, yet failed to take reasonable steps to eliminate that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Bryan Cty. v. Brown*, 520 U.S. 397, 341 (1997) (deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.").

The issue again is that Plaintiff has not articulated how his Fourteenth Amendment rights were violated by Page, Accornero, or Williams, and as such Plaintiff has not alleged that the City's action or inaction was the moving force behind a violation of his constitutional rights. Furthermore, even if the Officers had the ability to put Plaintiff on a parole hold, and even if Chief Williams was "aware that officers of the Petaluma Police Department had previously mistakenly determined that suspects were on state parole when they were not on parole," Plaintiff has not alleged any facts showing that City officials "knew of the risk" that their actions could cause non-parolees to be held excessively—despite all the other safeguards—"yet failed to take reasonable steps to eliminate that risk." *Farmer*, 511 U.S. at 837. As such, Plaintiff may not maintain his *Monell* claim against the City. *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (in a *Monell* claim, "the factual allegations that are taken as true must plausibly suggest an

12

entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.").

As Plaintiff only asserts a Fourteenth Amendment claim against the City, and there is no indication he will be able to allege facts demonstrating his Fourteenth Amendment rights were violated as a result of the City's action or inaction, Plaintiff's *Monell* claim against the City is **DISMISSED WITHOUT LEAVE TO AMEND**.

6. Summary

While the Court does not take lightly the notion that police may misidentify suspects as parolees when they are not, Plaintiff's Fourteenth Amendment claims are not supported by his allegations or the judicially noticeable documents in the record. Accordingly, based on the analysis above, Plaintiff's claims against the City Defendants are **DISMISSED WITHOUT LEAVE TO AMEND**.

**B.     County Defendants**

The County Defendants challenge Plaintiff's claims against them on the following grounds: (1) Sheriff Freitas should be dismissed in in his official capacity given the presence of the County in this lawsuit; (2) Plaintiff has failed to allege facts showing the County Defendants violated § 1983 by denying him access to legal materials; (3) Plaintiff has failed to allege facts supporting his Fourteenth Amendment claim related to his parole hold; and (4) they are entitled to qualified immunity and absolute immunity based on the presence of a facially-valid detainer.

1.      Official Capacity and Fifth Amendment Claims

First, as noted above with the City Defendants, it is unnecessary to name Sheriff Freitas in his official capacity given the presence of the County in this matter. *See Graham*, 473 U.S. at 166; *Vance*, 928 F. Supp. at 996. Accordingly, Plaintiff's claims against Sheriff Freitas in his official capacity are **DISMISSED WITHOUT LEAVE TO AMEND**.

Additionally, as none of the County Defendants are federal actors, Plaintiff's Fifth Amendment claim is also **DISMISSED WITHOUT LEAVE TO AMEND**.

2.      Denial of Access to Legal Materials

Second, the County Defendants ask the Court to dismiss Plaintiff's Fourteenth Amendment

claim concerning access to legal materials while held in the Sonoma County Jail. As the Court noted in its prior Order, there is a "fundamental constitutional right of access to the courts[,]" and this right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). In showing that a defendant unconstitutionally restrained a plaintiff's access to the courts by prohibiting him access to legal materials, a plaintiff must demonstrate that "the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (quoting *Bounds*, 430 U.S. at 823); *see Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (affirming the district court's dismissal where the plaintiff did not "allege[] injury, such as inability to file a complaint or defend against a charge" resulting from deficiencies in access (quoting *Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004)).

The Court previously dismissed Plaintiff's claim related to access to legal materials, noting Plaintiff had only put forward "bare-bones allegations" that merely asserted "he repeatedly requested access to forms and legal materials necessary to challenge and appeal his incarceration[,]" but was denied access. *See* Order on Mots. to Dismiss at 9 (quoting Compl. ¶ 23). Plaintiff's Amended Complaint provides more detail, explaining that while he was in custody, the Jail had a policy that "reduc[ed] the number of times an inmate could request legal materials from the law library to once every 30 days." Am. Compl. ¶ 42. He states this policy "prevented him from effectively challenging his alleged parole status" and "prevented him from obtaining his release from custody earlier than 60 days." *Id.* The County Defendants confirmed Plaintiff's allegations concerning the 30-day policy, noting in their Motion that under their policy, "inmates have to submit written request forms to access legal reference materials[, which] . . . are collected three times a week and are forwarded to a contracted service provider for processing." Cty. Defs.' Mot. at 3. "Inmates may request information on one form with up to five items/topics every 30 days." *Id.*[5] In response, Plaintiff asserts he was limited to two requests of the law library

---

[5] The County Defendants request the Court take judicial notice of this policy. Req. for Judicial Notice at 4-5; *see* Rizzo Decl., Ex. H (Policy re: "Access to Legal Reference Materials"). (Cont.)

14

in the 63 days he was detained. Opp'n at 4. He further notes that although he "had counsel to represent him in the criminal case to defend against the pending felony charges, he had not retained counsel to represent him to challenge his parole status after his parole hearing." *Id.* He asserts he was "pro se as to that matter and should have had unlimited access to the law library to help him challenge his continued detention." *Id.*

Despite the added detail in Plaintiff's Amended Complaint, he still fails to allege facts that support his denial of access to legal materials claim. Specifically, he has not shown "that the alleged shortcomings in the library . . . program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 823). As the Court previously noted, to establish actual injury, Plaintiff might have alleged "for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement . . . . [o]r that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.* But Plaintiff has not alleged facts showing how the Jail's policy hindered his efforts to challenge his parole status. As noted, the Court also previously took judicial notice of two California Board of Parole Hearings held on December 7 and 21, 2012 relating to Plaintiff's parole, during which Plaintiff was represented by counsel—including his current counsel of record at the second hearing. *See* Bruggisser Decl., Exs. D-E; Second Bruggisser Decl., Exs. D-E, Dkt. No. 40-1. Plaintiff's allegations fail to plausibly demonstrate that the Jail's library policy prevented him from pursuing his legal claims or in some other way denied him access to the courts. *Alvarez*, 518 F.3d at 1155 n.1; *see also Woodward v. Subia*, 2008 WL 4196692, at *2 (E.D. Cal. Sept. 11, 2008) ("[v]arious resources, documents, and supplies merely provide the instruments for reasonable access, and are not protected in and of themselves." (quotation omitted; alteration in original)).

As there is no indication Plaintiff can allege facts demonstrating he was denied access to the courts as a result of either the County or Sheriff Freitas's actions or inaction, Plaintiff's § 1983

---

Although Plaintiff did not challenge this request, the Court finds it unnecessary to take judicial notice of the policy at this time.

1  claim against them for the denial of access to legal materials is **DISMISSED WITHOUT**
2  **LEAVE TO AMEND**. *See Fitzhugh v. Wieking*, 2002 WL 1812831, at *2 (N.D. Cal. Aug. 1,
3  2002) (dismissing without leave to amend where it was evident plaintiff had access to the courts
4  and was unable to allege actual injury).

5      3.    Parole Hold

6  A "petition for damages for excessive custody can be a legitimate § 1983 claim." *Haygood*
7  *v. Younger*, 769 F.2d 1350, 1359 (9th Cir. 1985) (en banc). A wrongful detention can ripen into a
8  due process violation if "'it was or should have been known [by the defendant] that the [plaintiff]
9  was entitled to release.'" *Gant*, 772 F.3d at 620 (quotation omitted; alterations in original).
10 "Cases holding that an incarceration violated the Due Process Clause because defendants should
11 have known the plaintiff was entitled to release fit at least one of two categories: (1) the
12 circumstances indicated to the defendants that further investigation was warranted, or (2) the
13 defendants denied the plaintiff access to the courts for an extended period of time." *Id.* at 621
14 (quotation omitted); *see also Starr*, 652 F.3d at 1208 (acquiescence or culpable indifference may
15 suffice to show a supervisor played a role in the alleged constitutional violations). Furthermore, a
16 public entity can be liable under the Fourteenth Amendment for failing to "institut[e] readily
17 available procedures for decreasing the risk of erroneous detention." *Fairley v. Luman*, 281 F.3d
18 913, 918 (9th Cir. 2002) (failure to instigate procedures to alleviate problem of detaining
19 individuals on the wrong warrant could constitute a "policy" where policymakers knew this
20 problem was "not uncommon").

21 The Court previously dismissed Plaintiff's claims against the County Defendants because,
22 among other things, Plaintiff failed to allege (1) what if anything was deliberately indifferent
23 about the County Defendants' actions, or that the County Defendants actively denied Plaintiff an
24 opportunity to challenge his confinement; (2) Sheriff Freitas was personally involved in the
25 purported deprivation or that there exists a sufficient causal connection between his wrongful
26 conduct and the alleged violation; or (3) that Sheriff Freitas was not entitled to qualified or
27 absolute immunity. Order on Mots. to Dismiss at 10-18.
28 Plaintiff's Amended Complaint now alleges "he complained to jail personnel, on more

than one occasion, that he was not in fact on parole and should not be held as a parole violator." Am. Compl. ¶ 38. He further alleges "the Sonoma County Jail has the authority to release persons in custody on parole violations if they determine that a suspect is not in fact on parole[,]" based on the fact that this "actually happened to him—th[e] Sonoma County Jail personnel eventually, after plaintiff repeatedly complained that he was not on parole, looked into whether or not he was on parole, and determined that he was not and lifted the parole hold so that he could bail out of custody." *Id.* ¶ 40. Plaintiff appears to assert a due process claim on the basis that there were circumstances indicating to the County Defendants that further investigation into the reason for keeping Plaintiff in custody was warranted.

As an initial matter, Plaintiff's allegations that he informed the Jail personnel he was not on parole lack plausibility, because—as mentioned above—the judicially noticed claim he filed against the County suggests Plaintiff did not know he was not on parole until the day he was released from Jail. *See* Bruggisser Decl., Ex. F ("On or about January 16, 2013 claimant learned that he was not in fact on parole when he was arrested."). Furthermore, nothing in the judicially noticed Parole Hearings indicates Plaintiff ever challenged whether he was on parole. *See id.*, Exs. D-E; Second Bruggisser Decl., Exs. D-E.

While Plaintiff may be able to allege facts somehow explaining the foregoing, or later submit evidence verifying his current version of the events, he still alleges no facts suggesting that (1) Sheriff Freitas and the Jail acted outside of what was required by the parole hold/detainer; (2) the detainer was not facially valid; or (3) Sheriff Freitas or the Jail could have released Plaintiff while the parole hold/detainer was in place. *See Acasio v. San Mateo Cty. Sheriff's Office*, 2015 WL 333011, at *5 (N.D. Cal. Jan. 23, 2015) (plaintiff failed to state a § 1983 claim against defendants for executing the three-month jail sentence where complaint had not alleged the order imposing the sentence was facially invalid). As the Court noted in its previous Order, Plaintiff has not alleged facts showing that Sheriff Freitas is not entitled to absolute immunity as he has not asserted any allegations to show Sheriff Freitas was not acting pursuant to a facially valid detainer. *See* Order on Mots. to Dismiss at 14-18; *see also Engelbretson v. Mahoney*, 724 F.3d 1034, 1039 (9th Cir. 2013) (prison officials who enforce facially valid courts order are entitled to absolute

17

immunity even if the prisoner claims the order is invalid or later overturned).

Finally, Plaintiff has not alleged facts showing the County lacked appropriate policies or procedures such that if the County had different policies or procedures they could have prevented Plaintiff's injury. As the County Defendants point out, Plaintiff had two hearings before the California Board of Parole, and the Board found Plaintiff was in violation of his parole rather than finding anything that would indicate Plaintiff was not on parole. Cty. Mot. at 15; *see* Bruggisser Decl., Exs. D-E; Second Bruggisser Decl., Exs. D-E. The Amended Complaint contains no allegations suggesting the Jail could have or should have found evidence that Plaintiff was not on parole—such as a facially invalid detainer—or, more importantly, that the Jail could have released Plaintiff without prior approval from the Court or the Board of Parole even if the Jail had such evidence.[6] Plaintiff has again failed to allege facts showing the Jail's policies or practices were the moving force behind his confinement, without which Plaintiff cannot maintain his *Monell* claim. *Dougherty*, 654 F.3d at 900; *see also Chambers v. Washington Cty.*, 2015 WL 1799834, at *8 (D. Or. Apr. 16, 2015) (where the allegations established the county held the plaintiff pursuant to a lawful and facially valid court order, the county's actions were neither the "cause in fact" nor the "proximate cause" of plaintiff's alleged constitutional injury).

As there is no indication Plaintiff will be able to allege facts demonstrating he has a valid claim against the County or Sheriff Freitas for constitutional injuries, his § 1983 claims against them are **DISMISSED WITHOUT LEAVE TO AMEND**.

4. Summary

Wrongful confinement is a serious claim—one which the Court does not take lightly. But ultimately, in this case, Plaintiff has alleged no plausible facts showing that any action or inaction by the County Defendants caused Plaintiff's injury, nor is there is any indication the County Defendants could have acted differently to prevent Plaintiff's injury. Accordingly, based on the analysis above, Plaintiff's claims against the County Defendants are **DISMISSED WITHOUT LEAVE TO AMEND**.

---

[6] Plaintiff has not explained how it was ultimately determined that he was not on parole.

**CONCLUSION**

In light of the foregoing analysis, the Court **GRANTS** the Defendants' Motions to Dismiss. Plaintiff's claims are **DISMISSED WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED.**

Dated: October 20, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge